IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| RASHEED SHAKUR, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | No. 4:14-cv-0197-DGK |
| | ) | (Crim. No. 4:09-CR-00224-DGK) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT JUDGMENT

This case arises out of Movant Rasheed Shakur's ("Movant") conviction on six counts as the ringleader in a large-scale conspiracy to distribute marijuana, cocaine, and methylenedioxymethamphetamine, popularly known as ecstasy. Pending before the Court is Movant's pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence Pursuant by a Person in Federal Custody" (Doc. 1). Movant seeks to vacate his conviction and sentence by asserting eighteen claims of error, most of which relate to claims of ineffective assistance of counsel. Finding no merit to any of Movant's claims, the Court DENIES the motion. The Court also declines to issue a certificate of appealability.

### Factual Background and Procedural History

The following background and procedural history draws almost entirely from the Eighth Circuit's decision denying Movant's direct appeal, *United States v. Shakur*. 691 F.3d 979 (8th Cir. 2012).

Prior to trial, Movant declined to accept a plea deal which, if accepted by the Court, would have led to a fifteen-year prison sentence. At trial, the Government introduced substantial evidence establishing that Movant operated a multimillion dollar drug trafficking conspiracy.

Heard in one wiretap claiming to be Kansas City's "Michael Corleone" (of "The Godfather" film series), Movant bankrolled everything from his associates' legal expenses and family funerals to his luxurious lifestyle. Pledged one associate, "Got foot soldiers out here like me, ready to kill anything that moves for you."

In early 2007, the Federal Bureau of Investigation ("FBI") and Kansas City Police Department began investigating the conspiracy. Their investigation produced evidence that, during 2007, Hugo Rodriguez-Rodriguez procured marijuana in El Paso, Texas and, with his associates, flew loads to Kansas City and delivered 2,880 pounds to Movant (as well as 31 pounds of cocaine). Later that year, officers stopped Rodriguez-Rodriguez and an associate leaving Movant's residence with $17,000 in cash. Officers persuaded the associate to work as a paid informant. She provided numerous details of the conspiracy, which led to the seizure in 2008 of over $200,000, money destined for suppliers in Mexico. The suppliers then limited Rodriguez-Rodriguez's access to drugs, constricting Movant's pipeline.

Seeking new sources, Movant established relations with Audel Delgado-Ordonez in Phoenix, eventually obtaining some 2,500 pounds of marijuana. Movant flew to Arizona every other week, packed eleven-pound quantities into boxes, and mailed the boxes from various Phoenix post offices to various addresses in Kansas City. He and his associates then gathered the boxes at his residence. The FBI obtained judicial authorization to wiretap Movant's phones from March 2009 to June 2009. As they collected details of Movant's operation from the wiretap, agents began intercepting packages to prove their contents. The conspirators devised but never implemented a scheme to transport drugs from Phoenix to Kansas City via tractor trailer to avoid losing packages in the mail. Throughout these operations, Movant purchased

ecstasy pills and high-grade marijuana from Jesse Oliver in Sacramento, California, using a similar mailing system.

On June 25, 2009, officers simultaneously executed search warrants at several conspirators' residences, seizing evidence and making arrests. Numerous indictments followed. Twenty-nine others pleaded guilty; many testified for the Government against Movant.

After a ten-day trial, the jury convicted Movant on Counts One (conspiracy to distribute 1,000 kilograms or more of marijuana, five kilograms or more of cocaine, and some amounts of ecstasy); Two (conspiracy to commit money laundering); Three (possession with intent to distribute cocaine); Four (possession with intent to distribute marijuana); Nine (felon in possession of a firearm); and Ten (possession of a firearm in relation to a drug trafficking offense). On August 5, 2011, Movant appeared before the Court for sentencing and, after the Court declined to continue the sentencing so he could obtain new counsel, chose to represent himself. At the hearing's conclusion, the Court sentenced Movant to the statutorily mandated sentence of life imprisonment plus 60 months.[1]

The Eighth Circuit affirmed the convictions and sentence on August 30, 2012. On February 27, 2014, Movant filed the pending motion to vacate his conviction under 28 U.S.C. § 2255. The Government does not dispute that the motion was timely filed.

## Standard of Review

In a proceeding brought under 28 U.S.C. § 2255, the district court may "vacate, set aside or correct [a] sentence" that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A § 2255 petition "is not a substitute for a direct appeal, and is not the proper way to complain about simple trial errors." *Anderson v. United States*, 25 F.3d 704,

---

[1] Specifically, the Court sentenced him to life imprisonment on Count One; 240 months on Count Two; 360 months on Count Three; 120 months on Counts Four and Nine; all to be served concurrently. The Court also sentenced him to 60 months on Count 10, to be served consecutively, for a total term of imprisonment of life plus 60 months.

706 (8th Cir. 1994) (internal citations omitted). Furthermore, where a movant does not bring a claim on direct appeal, he can be barred from raising the claim in a § 2255 proceeding unless he establishes: (1) cause for the procedural default and actual prejudice; or (2) that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

## DISCUSSION

### I. Movant's claims are meritless.

Movant's memorandum of law (Doc. 13) asserts eighteen grounds for relief.[2] All but three of these (grounds Eight, Ten, and Eleven) assert that Movant received ineffective assistance of trial counsel.

#### A. Movant's ineffective assistance of counsel claims are meritless.

To succeed on a claim of ineffective assistance of counsel, a movant must show that "(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Middleton v. Roper*, 455 F.3d 838, 846 (8th Cir. 2006). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Strategic choices made in the shadow of a lack of preparation or investigation, however, are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

---

[2] Although Movant's amended motion (Doc. 6) asserts seventeen grounds for relief, he asserts eighteen in his more comprehensive memorandum of law.

To establish prejudice, a movant must show that the outcome would have been different had counsel's performance not been deficient. If the movant cannot show a reasonable probability that the outcome would have been different, he cannot show prejudice. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). Failure to satisfy either prong is fatal to the claim, and the court need not reach the performance prong if the defendant suffered no prejudice from the alleged ineffectiveness. *See Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997).

Particularly relevant to this case, the claims raised by the movant must go beyond mere allegations and must not be so incredulous as to be unbelievable. *See Blackledge v. Allison*, 431 US 63, 74 (1977) (noting in the context of a collateral attack on a guilty plea that the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"); *United States v. Bryson*, 268 F.3d 560, 562 (8th Cir. 2001) (upholding the district court's summary dismissal of ineffective assistance of counsel claims because the movant failed to present sufficient information for the court to apply the *Strickland* analysis).

This brings the Court to the most obvious problem presented with Movant's motion and briefing. As the Government aptly describes his filings,

> As a whole, Shakur's allegations are disorganized, rambling and incomprehensible. Many of the individual claims allege dozens of errors or omissions by defense counsel, none of which are properly developed. Shakur largely presents only generic legal principles in support of the claims, which are primarily built upon layers of conclusory allegations. Shakur utterly fails to present a proper *Strickland* analysis regarding any of the claims. Shakur fails to establish prejudice or a reasonable probability that the results of the proceeding would be different as a result of the claims. Instead, Shakur simply asserts repeatedly, without any analysis, that he would have been acquitted.

Resp. (Doc. 31) at 11.  The problem is particularly troublesome because Movant has filed more than 800 pages of material in connection with his motion, including more than 200 pages of argument.  The Court has diligently waded through his filings and rules as follows.

Movant's over-arching allegation appears to be that his attorney was so ineffective that Movant was deprived of the right to present a defense.  Movant is confusing the right to effective assistance of counsel with the non-existent right to a *successful* defense.

> The Sixth Amendment does not require for its satisfaction that the actions of counsel result in a favorable outcome.  Rather, its requirement is met whenever the accused is supplied counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles.

*Taylor v. United States*, 282 F.2d 16, 20 (8th Cir. 1960); *Morreno-Espada v. United States*, 666 F.3d 60, 64-65 (1st Cir. 2012) ("the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense").

Movant is also patently wrong that counsel was ineffective in any apparent way.  During its ten-day presentation, the Government presented literally hundreds of intercepted phone calls and text message communications between Movant and various co-conspirators detailing the conspiracy.  These communications were corroborated by live testimony from numerous co-conspirators and physical evidence including shrink-wrapped bundles of money, pounds of drugs, and false tax returns.  Trial counsel's performance was the best that could be expected given the volume of evidence possessed by the Government.  *See United States v. Kelly*, 581 F.2d 152, 153 (8th Cir. 1978) (permitting a § 2255 court to rely on "its prior familiarity with the criminal trial," including personal recollection, "to conclusively resolve the factual issue raised by petitioner.").  Trial counsel was intelligent, informed, and prepared.  He filed the appropriate motions, and, where prudent, made good objections and asked probing questions on cross-

examination. He gave a solid opening statement, articulated a coherent theory of defense throughout the trail, and then gave the best closing argument possible. Movant's claims are facially unbelievable and should be summarily dismissed. *See United States v. Bryson*, 268 F.3d at 562.

### B. Movant's three remaining claims are meritless.

Movant's three remaining grounds for relief are also meritless. In his eighth ground, Movant contends he was entitled to have a jury find the fact of his prior convictions which subjected him to an enhanced mandatory minimum. He was not. Sentence "enhancements based on the fact of a prior conviction are an exception to the general rule that facts increasing the prescribed range of penalties must be presented to a jury." *United States v. Abrahamson*, 731 F.3d 751, 752 (8th Cir. 2013).

Movant's tenth ground for relief is that the Court erred in denying his request to continue the sentence hearing so he could hire a new attorney, instead granting his alternate request to represent himself at sentencing. Movant previously raised this issue on his direct appeal, and the Eighth Circuit affirmed. *Shakur*, 691 F.3d at 984. Because this issue was raised and decided on direct appeal, absent an intervening change in controlling authority, Movant may not revisit this issue in a § 2255 motion. *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011).

Movant's eleventh ground for relief is that counsel for the Government suborned perjury by introducing evidence of a non-existent cocaine conspiracy. Although much of this claim is incomprehensible, in relevant part Movant contends the Government's witnesses lied, the Government fabricated the text messages and evidence of cocaine, and counsel for the Government knew about these lies and fabrication which violated his due process rights. Because Movant could have raised this issue on direct appeal but did not, he cannot raise this issue for the first time in his habeas petition. *Bousley,* 523 U.S. at 622.

## II. No evidentiary hearing is required or will be held.

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id.* (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)).

As discussed above, Movant's claims are conclusively contradicted by the record or not cognizable. Consequently, no evidentiary hearing is required or will be held.

## III. No certificate of appealability should be issued.

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requires the movant to demonstrate "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 464 U.S. 800, 893 n.4 (1983)). In the present case, the Court holds no reasonable jurist would grant this § 2255 motion, and so the Court declines to issue a certificate of appealability.

## Conclusion

For the reasons discussed above, the motion (Doc. 1) is DENIED and the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Date: July 13, 2015         /s/ Greg Kays
                            GREG KAYS, CHIEF JUDGE
                            UNITED STATES DISTRICT COURT